Filed 8/26/21  P. v. Hillman CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>EUGENE HILLMAN,<br><br>    Defendant and Appellant. | E073795<br><br>(Super.Ct.No. RIF1805107)<br><br>OPINION |

APPEAL from the Superior Court of Riverside County.  Ronald L. Taylor, Judge. (Retired judge of the Riverside Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Affirmed.

Mark D. Johnson, under appointment by the Court of Appeal, for Defendant and Appellant.

Matthew Rodriguez, Acting Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland and Laura Baggett, Deputy Attorneys General, for Plaintiff and Respondent.

INTRODUCTION

A jury found defendant and appellant Eugene Hillman guilty of residential burglary (Pen. Code,[1] § 459, count 1), unlawful possession of personal identifying information with a previous conviction (§ 530.5, subd. (c)(2), count 3), unlawful possession of personal identifying information of 10 or more persons (§ 530.5, subd. (c)(3), count 4), and two counts of failure to appear in court as required (§ 1320.5, subd. (a), counts 5 & 6). The jury also found true the allegations that at the time of the commission of count 1, another person, other than an accomplice, was present in the residence (§ 667.5, subd. (c)(21)), and that defendant committed counts 5 and 6 while released from custody on bail (§ 12022.1). In a bifurcated hearing, defendant admitted he had two prior serious felony convictions (§ 667, subd. (a)), and two prior strike convictions (§§ 1170.12, subds. (a)-(d), 667, subds. (c) & (e)(2)(A), 1170.12, subd. (c)(2)(a)), and that he had served two prior prison terms (§ 667.5, subd. (b)). The court sentenced him to the indeterminate term of 25 years to life in state prison on count 1, and a total determinate term of 10 years eight months on the other counts.

On appeal, defendant contends the trial court abused its discretion when it denied his request to strike one or both of his prior strike convictions pursuant to *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 (*Romero*). We disagree and affirm.

---

[1] All further statutory references will be to the Penal Code unless otherwise noted.

FACTUAL BACKGROUND

On October 4, 2018, at around 4:45 a.m., a police officer responded to a call of suspicious people walking around, looking through people's mailboxes. The officer observed defendant and a woman walking and asked them to stop to talk so he could find out what they were doing in the neighborhood. He noticed defendant sweating profusely and acting nervous. The officer detained him and recovered three pieces of mail in his pocket addressed to someone else. The woman had 18 pieces of mail in her purse. The officer searched defendant's car and found a duffle bag with over 90 pieces of mail addressed to over 15 different people. He also found two blank checks and two credit cards belonging to other people in defendant's wallet. The officer arrested defendant, gave him a citation, and released him at about 7:00 a.m. Defendant left the scene in his car.

Later that same morning, about 9:00 a.m., Emily C. (the victim) was awakened from her sleep by a loud noise. She saw the doorknob fall off her door and the door kicked in. She jumped out of bed, grabbed her wallet, keys, and cell phone, and ran into the kitchen to hide. In the kitchen, she noticed that the cabinet doors and drawers were all open. The victim grabbed a knife and hid next to the refrigerator. She then called her landlord and the police. She heard multiple voices and loud noises. After the noise stopped, the victim went to the front door and opened it to see if anyone was out there. She saw a man in the driver's seat of a big car and a woman standing next to the passenger's side of the car, holding her (the victim's) second cell phone. The woman got into the car, and the victim went to the front of the car, hit the hood, and told the man and

3

woman that she had called the police. The car moved toward her, then quickly went in reverse and drove away. The victim chased the car and grabbed onto the driver's side mirror, but she could only hold on for a couple of feet since the car was driving so fast.

Two police officers responded to the scene. One of the officers went inside the house and observed that two bedrooms had been ransacked, and one bedroom had an open window with muddy footprints on the carpet coming from the outside and into the house. The officers viewed video footage taken during the incident by the security cameras mounted on the house and recognized defendant from a previous contact. One of the officers also recognized the car that was used in the burglary as one he had seen defendant in before. The video clips showed that defendant walked up to the front door, looked around, and jiggled the door. He then went around to the back of the house, and when he realized there was a camera, he backed up to try and stay out of its view.

The police subsequently located and arrested defendant. They searched his car and found the victim's briefcase containing her laptop, as well as numerous pieces of mail addressed to different people and a notepad with other people's personal identifying information, such as names, Social Security numbers, addresses, and phone numbers.

## DISCUSSION

### The Trial Court Did Not Abuse Its Discretion in Declining to Dismiss Defendant's Prior Strike Conviction(s)

Defendant contends the trial court abused its discretion when it denied his motion to dismiss one or both of his prior strike convictions pursuant to *Romero*, *supra*, 13 Cal.4th 497. He specifically claims the record shows the court denied the motion because

it erroneously believed it lacked the discretion to grant it, and it believed it was required by law to impose a sentence of 25 years to life on count 1. He claims the court failed to consider all the required factors in exercising its discretion on such a motion; thus, he argues that he was denied due process. Defendant also argues the record establishes that the court abused its discretion by considering only one factor—that he had prior serious felony convictions. However, he then claims "the only factor" considered by the court was "its belief that he would not remain crime free." We find no abuse of discretion.

A. *Background*

Defendant filed a motion requesting the court to dismiss his prior strike convictions. In the motion, he asked the court to exercise its discretion to strike his prior convictions because his current convictions were for nonviolent, nonserious felonies, and his prior convictions were 20 years old.

The People filed an opposition, explaining that the court's discretion to strike prior felony convictions in furtherance of justice was limited, and that the court was required to consider a defendant's background, the nature of his present offenses, and other individualized considerations. The People argued that the nature and circumstances of the present offenses did not justify dismissing defendant's prior strikes since he showed callousness and a complete disregard for authority and the public. He was arrested in the early morning hours for mail theft, and then only three hours later, in the middle of the day, broke into the victim's home. Furthermore, he showed experience and sophistication, as he cased the house by jiggling the doorknob, looking through the windows, and trespassing into the backyard. He then found an entry point out of the

5

security camera's view, went inside the house, ransacked it, and fled the scene in an extremely dangerous manner with the victim holding on to the side mirror of his car.

The People further pointed out that defendant's first prior strike was committed in 2002 when he was convicted of first degree burglary and given probation; then, only seven months later he committed another first degree burglary, which was his second strike offense. He served nine years in prison, and shortly after his release pled guilty to identity theft and receiving stolen property, as well as a theft-related misdemeanor. After his most recent release from custody, defendant committed the current offenses. The People noted that, even though his prior strikes were about 16 years old, defendant had not had "any meaningful break from custody." Thus, despite being punished, he refused to "learn his lesson." The People observed that all of his convictions involved the same type of conduct—either breaking into someone's house or theft. The People further contended that defendant's background, character, and prospects did not warrant dismissing a prior strike.

The court held a *Romero* hearing on September 27, 2019. The court stated that it reviewed the moving and opposing papers, as well as the probation officer's report. Both parties submitted on their papers. The court then stated: "So I did read your brief with regard to the points and authorities in regard to the *Romero* motion, and I don't feel like it's necessary to go through all of the *Romero* factors—*Romero Williams* factors because there's one factor that stands out above all the other factors and that would be I have to determine that it appears to me that it's likely that if I give [defendant] a break by granting one or two of the strikes—the motion to grant one or two of the strikes, that he's

6

likely to remain crime free. [¶] Based on his . . . criminal record, and the facts and circumstances of this crime which are very, very serious, if I were to consider this crime in comparison to other crimes, it's substantially more serious than other crimes in this category of crimes, but there's no way in the world that I can reach the conclusion that he's likely to remain crime free. [¶] So I don't see a need to go through the elements of the *Romero* motion because it's my opinion that if I gave him a break, that it wouldn't mean that he's going to remain crime free. I don't think he would remain crime free looking at his substantial criminal record, and he continues to commit crimes." Accordingly, the court denied the *Romero* motion.

Defendant addressed the court personally and begged it to dismiss a strike. He said he went to the house "under . . . false pretense[s]," since the woman told him it was her friend's house. He said he never entered the home, and then said he did not even go to the house. Defendant repeatedly told the court he was not a habitual criminal, that he had made some mistakes, and that he was high on methamphetamine, but he had learned his lesson.

The court replied, "I have to follow the law as I understand it to be, sir. You don't qualify legally speaking for the *Romero* motion. I have to look at certain factors, and if I look at those factors, you don't qualify when I apply those factors to your history and to this crime . . . ." Defendant asked, "Is it because of my time of—from being released from prison?" The court replied, "Well, it's more than one factor. You have two strikes. [¶] . . . [¶] Let's start off with that." Defendant continued to engage the court. He said his past strike convictions should have been run concurrent, and his first strike was not

7

even a strike because he never entered anybody's home, and it should have been considered vandalism. The court responded, "Sir, I'm not re-litigating the strikes that you received," and explained that the only question it had before it was whether he qualified to have his strikes dismissed, and the answer was, "under the law you do not, sir." Defendant tried to read section 1385 to tell the court it had discretion to strike a strike. The court said, "Sir, I'm familiar with Penal Code section 1385. You don't have to read it to me." The court started recalling the circumstances of the current case, that the police found the victim's computer container in defendant's car, and that the victim had $2,000 in that container. Defendant disputed the facts and evidence in the case and said he did not commit the burglary. Defendant persisted and asked for the "leniency of the court." Then, the court explained his sentence to him as follows: "Sir, this is a three strikes case. The sentence for Count 1 is an indeterminate sentence of 25 years to life. I don't have discretion. That is the sentence. There's a sentencing formula when you get yourself into a three strikes situation. With Count 1 the sentence that I must impose is an indeterminate sentence of 25 years to life. [¶] That's on the three strikes case. You also have determinate sentence charges. That's a separate sentence."

Defendant got very upset, very animated, and physical. When the deputy tried to remove him from the courtroom to take him to the holding cell, he got into a physical altercation with the deputy. The court pushed the emergency alarm button to call other deputies to the courtroom to help. Due to his altercation with the deputy, the court found that he voluntarily "absented himself from the sentencing." It then proceeded to sentence him to 25 years to life on count 1, four years on count 3, 16 months on both counts 5 and

8

6, plus two years on the section 12022.1 enhancements. The court stayed the term on count 4 under section 654 and stayed the other enhancements. Thus, the total determinate sentence was 10 years eight months and the total indeterminate sentence was 25 years to life in prison.

B. *The Court Properly Exercised Its Discretion*

In *Romero*, the Supreme Court held that a trial court has discretion to dismiss prior strike conviction allegations under section 1385. (*Romero*, *supra*, 13 Cal.4th at pp. 529-530.) In *People v. Williams* (1998) 17 Cal.4th 148 (*Williams*), the court identified a number of specific factors a trial court should consider when exercising its discretion. "[I]n ruling whether to strike or vacate a prior serious and/or violent felony conviction allegation or finding under the Three Strikes law, on its own motion, 'in furtherance of justice' pursuant to Penal Code section 1385[, subdivision] (a), or in reviewing such a ruling, the court in question must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*Id.* at p. 161.)

The trial court's decision not to dismiss a prior strike conviction is reviewed under the deferential abuse of discretion standard. (*People v. Carmony* (2004) 33 Cal.4th 367, 374 (*Carmony*).) "[A] trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (*Id.* at p. 377.)

9

"Because the circumstances must be 'extraordinary . . . by which a career criminal can be deemed to fall outside the spirit of the very scheme within which he squarely falls once he commits a strike as part of a long and continuous criminal record, the continuation of which the law was meant to attack' [citation], the circumstances where no reasonable people could disagree that the criminal falls outside the spirit of the three strikes scheme must be even more extraordinary." (*Id.* at p. 378.)

The circumstances here were far from extraordinary, and the trial court properly applied the *Williams* factors to this case in denying defendant's motion. The court reviewed his background and criminal history, which were outlined in the probation report and the People's opposition. His criminal history dates back to 1999. He has numerous Vehicle Code convictions, including driving with a suspended license (Veh. Code, § 14601.1) and willful violation of a promise to appear in court (Veh. Code, § 40508). His first strike conviction was for first degree burglary in 2003, and he was placed on formal probation. However, the following year he committed another first degree burglary—his second strike conviction—and was sentenced to nine years in state prison. After being released, defendant committed two more Vehicle Code violations in 2014. The following year, he sustained convictions for unlawful possession of personal identifying information of 10 or more persons (Pen. Code, § 530.5, subd. (c)(3)), attempted buying or receipt of a stolen vehicle (Pen. Code, §§ 664, 496d, subd. (a)), and receiving stolen property (Pen. Code, § 496, subd. (a)). He was sentenced to a total of three years four months in state prison, plus 229 days in jail. A short time after being released, he committed the current offenses, which included the repeat offenses of

burglary and unlawful possession of personal identifying information of 10 or more persons.

Defendant's criminal history includes formal probation, a jail sentence, and state prison terms, none of which did anything to deter him from committing further crimes. It is clear from the record that prior rehabilitative efforts have been unsuccessful. As the court remarked: "I don't think he would remain crime free looking at his substantial criminal record, and he continues to commit crimes." The court noted that the facts and circumstances of the current crimes were "very, very serious." The police arrested defendant in the early morning for mail theft and released him. Then, just a few hours later, he broke into the victim's home, while she was in the house, ransacked it, stole some items and cash, and fled the scene in his car, with the victim hanging on to the side mirror. He showed callous disregard for both authority and the public. The court expressly stated that it was denying defendant's motion to strike, based on his criminal record and the very serious facts and circumstances of the current crimes. When defendant persisted in begging the court for "a chance," the court told him: "I have to look at certain factors, and … you don't qualify when I apply those factors to your history and to this crime for the Court to give you that benefit to grant the relief."

Defendant claims the court denied the motion because it believed it did not have the discretion to grant it. However, he then claims the court abused its discretion by failing to weigh the required factors, and instead relying on a single factor—that defendant was not likely to remain crime free. He also contends the court denied the motion, in part, simply because he had prior strike convictions. Defendant points to the

11

portion of the court's comments when it said, "I don't feel like it's necessary to go through all of the . . . *Romero Williams* factors because there's one factor that stands out above all the other factors and that would be I have to determine that it appears to me that it's likely that if I give [him] a break by granting . . . the motion to grant one or two of the strikes, that he's likely to remain crime free." He then focuses on a portion of the latter discussion when the court said, "The sentence for Count 1 is an indeterminate sentence of 25 years to life. *I don't have discretion*. That is the sentence. There's a sentencing formula when you get yourself into a three strikes situation. With Count 1 the sentence that I must impose is an indeterminate sentence of 25 years to life." (Italics added.)

Defendant's claims are not supported by the court's comments when read in context. He claims the court did not know it had the discretion to dismiss a strike. However, the court stated it was familiar with section 1385, and it read the People's opposition, which thoroughly discussed the court's discretion to dismiss a strike. More specifically, when the defendant told the court that it had authority to strike his strike, the court said, "[c]orrect, I do," thereby specifically acknowledging its awareness of its authority to strike a prior strike conviction. The court's comments unquestionably demonstrate that it understood its discretion under section 1385 to strike a prior serious or violent felony if appropriate under all of the facts and circumstances.

As to defendant's claim that the court abused its discretion by relying on only one factor in denying his motion, we note, "[t]he court is presumed to have considered all of the relevant factors in the absence of an affirmative record to the contrary." (*People v. Myers* (1999) 69 Cal.App.4th 305, 310.) The court was aware of all of the relevant

12

factors to properly exercise its discretion in this case. It had read the probation officer's report, defendant's motion, as well as the People's opposition. These documents provided the court with information about the circumstances of the offense, defendant's serious or violent prior felony convictions, and defendant's background character and prospects. In fact, the court detailed on the record, just how serious the current crime was, and that defendant had committed this crime just hours after being released from another arrest. Thus, the fact that the court focused its comments on its belief that defendant would not remain crime free or that he had prior convictions does not mean that it considered only those factors. Furthermore, the court properly noted those factors, since defendant had shown himself to be a recidivist, unable to refrain from committing crimes for any significant period of time when he is released from prison.

As to defendant's claims that the court expressly said it did not have the discretion to dismiss a strike and that it believed it was required to impose 25 years to life on count 1, we note that " 'the Three Strikes law does not offer a discretionary sentencing choice, as do other sentencing laws, but establishes a sentencing requirement to be applied in every case where the defendant has at least one qualifying strike, unless the sentencing court "conclud[es] that an exception to the scheme should be made because, for articulable reasons which can withstand scrutiny for abuse, this defendant should be treated as though he actually fell outside the Three Strikes scheme." ' " (*Carmony*, *supra*, 33 Cal.4th at p. 377.) The court simply determined that an exception was not warranted here. The court, having determined not to strike defendant's strike, was required to impose the sentence prescribed by the three strikes law. The court's

13

statement, in context, was a correct statement of the sentencing required under the three strikes law.

Defendant fails to discuss the context in which the court made its comments. The court had already explained its reasons for denying the motion. (See *ante*.) Nonetheless, defendant relentlessly begged it to dismiss one of his strikes, pointing out the circumstances of his prior strike convictions, denying that he committed the current burglary, stating he was high on methamphetamine and that he had been addicted to drugs for years, saying he was not a habitual criminal, and telling the court he had a wife and sons to think about. The court responded by trying to reiterate and explain that defendant did not qualify to have his *Romero* motion granted, in light of the factors it was required to consider. Defendant informed the court it had the discretion under section 1385, and the court reassured him it was familiar with that statute. When defendant kept persisting, the court again tried to explain that he did not qualify, stating that "there's a sentencing formula when you get yourself into a three strikes situation. . . ." Reading the court's comments in the context of the entire *Romero* hearing, we conclude the court was well aware of its discretion and properly exercised it. (See *ante*.)

In light of the court's acknowledgment that it reviewed the moving and opposing papers and its explanation of its reasons for declining to strike defendant's prior strike convictions, we do not find the decision to be arbitrary or irrational. The record shows the court was aware of its discretion and the applicable factors a court must consider in dismissing a prior strike, and that it appropriately applied the factors. Thus, we cannot

14

say the court abused its discretion when it declined to dismiss defendant's prior strike convictions.

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

FIELDS _____
J.

We concur:

MILLER _____
Acting P. J.

RAPHAEL _____
J.